UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

SARAH LOUISE NEWMAN,

     Plaintiff,

v.

KILOLO KIJAKAZI,
ACTING COMMISSIONER OF THE
SOCIAL SECURITY
ADMINISTRATION,

     Defendant.

CIVIL ACTION NO. 5:22-59-KKC

<u>OPINION AND ORDER</u>

*** *** ***

This matter is before the Court on the parties' cross-motions for summary judgment. (DE 10, 14.)  Plaintiff Sarah Louise Newman brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the denial of her claim for disability insurance benefits and supplemental security income.  The Court, having reviewed the record, will deny Plaintiff's motion, grant the Acting Commissioner's motion, and affirm the Acting Commissioner's decision.

**I.  Analysis**

This Court's review of the decision by the Administrative Law Judge ("ALJ") is limited to determining whether it "is supported by substantial evidence and was made pursuant to proper legal standards." *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (citation and quotation marks omitted).  To determine whether a claimant has a compensable disability under the Social Security Act (the "Act"), the ALJ applies a five-step sequential process.  20 C.F.R. § 404.1520(a)(1), (4); *see also Miller v. Comm'r of Soc. Sec.*, 811

1

F.3d 825, 834 n.6 (6th Cir. 2016) (describing the five-step evaluation process).  The five steps

are:

> *Step 1:*  If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> *Step 2:*  If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.
>
> *Step 3:*  If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his or her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.
>
> *Step 4:*  If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> *Step 5:*  If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x. 162, 169 (6th Cir. 2016) (citing *Rabbers*, 582 F.3d

at 652)).

If, at any step in the process, the ALJ concludes that the claimant is or is not disabled,

the ALJ can then complete the "determination or decision and [the ALJ] do[es] not go on to

the next step." § 404.1520(a)(4).  In the first four steps of the process, the claimant bears the

burden of proof.  *Sorrell*, 656 F. App'x. at 169 (quoting *Jones v. Comm'r of Soc. Sec.* 336 F.3d

469, 474 (6th Cir. 2003)).  If the claim proceeds to step five, however, "the burden shifts to

the Commissioner to identify a significant number of jobs in the economy that accommodate

the claimant's residual functional capacity . . . and vocational profile."  *Id.* (citation and

quotation marks omitted); *see also* § 404.1520(g)(1).

In denying Newman's claim, the ALJ engaged in the five-step sequential process set

forth in the regulations under the Act.  § 404.1520(a); *see, e.g., Walters v. Comm'r of Soc. Sec.*,

127 F.3d 525, 529 (6th Cir. 1997).

2

At step one, the ALJ determined that Newman has not engaged in substantial gainful activity since September 17, 2019.  (Administrative Record ("AR") at 18.)

At step two, the ALJ determined that Newman suffers from the severe impairments of osteoarthritis, benign brain tumors, anxiety, and depression.  (*Id.* at 18.)

At step three, the ALJ found that Newman does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (*Id.* at 19.)

Before proceeding to step four, the ALJ determined that Newman has the residual functional capacity ("RFC") to perform a range of "sedentary" work that includes:

- Frequently balancing, stooping, and kneeling
- Occasionally crouching

(*Id.* at 21-22.)

As for restrictions for "mental issues," the ALJ determined that Newman could:

- Perform simple, individualized, goal-oriented tasks
- Understand and follow simple, routine, rote instructions
- Make simple, routine decisions
- Occasionally have work-related contact with supervisors, coworkers, and the public
- Occasionally tolerate changes to the workplace setting

(*Id.*)

At step four, the ALJ determined that Newman is unable to perform any past relevant work.  (*Id.* at 26.)

At step five, the ALJ determined that, considering the RFC described above and Newman's age, education, and work experience, there are jobs that exist in significant numbers in the national economy that Newman can perform, and thus, she is not disabled.  (*Id.* at 26-27.)

The ALJ's decision became the final decision of the Acting Commissioner when the Appeals Council subsequently denied Newman's request for review. *See* 20 C.F.R. § 422.210(a). Newman therefore has exhausted her administrative remedies and filed a timely appeal in this Court. The parties have filed cross-motions for summary judgment, and this case is now ripe for review under 42 U.S.C. § 405(g).

A.   **The ALJ did not err in finding that Newman only has moderate limitations in her abilities to handle stress and interact with others in the work setting.**

As it relates to the ALJ's determination of her RFC, Newman disputes the ALJ's finding that her mental impairments resulted in moderate limitations rather than marked limitations. (DE 10-1 at 5, 7-8.) Specifically, she focuses on the ALJ's finding that Newman has only moderate limitations in her abilities to handle stress and interact appropriately with others in the work setting. (*Id.* at 5.) Newman's primary argument is that the ALJ failed articulate why he rejected the medical opinions of two medical professionals, Dr. Cristi Hundley and Ms. Jennifer Sutherland. (*Id.* at 3.) According to Newman, the ALJ erred in failing to provide reasons for rejecting certain parts of Dr. Hundley's medical opinion, which the ALJ found "largely persuasive." (*Id.*) Moreover, she challenges the ALJ's finding that Ms. Sutherland's opinion was not persuasive. (*Id.* at 4-5, 9-13.)

When assessing whether a claimant is disabled, the ALJ must explain the persuasiveness of the medical opinions considered. 20 C.F.R. § 404.1520c(b) (2017)[1]; *Terhune v. Kijakazi*, CIVIL ACTION NO. 3:21-37-KKC, 2022 WL 2910002, at *3 (E.D. Ky. July 22, 2022). In evaluating persuasiveness, the ALJ must articulate the supportability and

---

[1] Newman filed her claim on September 17, 2019. This version of the regulation applies to claims filed on or after March 27, 2017. *See* § 404.1520c(b).

4

consistency of each medical opinion.[2]  § 404.1520c(b)(2); *Terhune*, 2022 WL 2910002, at *3. The ALJ's explanation as to persuasiveness "does not need to be lengthy." *Terhune*, 2022 WL 2910002, at *4.  Indeed, "the ALJ is not required to specifically use the terms 'supportability' or 'consistency' in his analysis." *Childers v. Kijakazi*, Civil No. 5:21-285-JMH, 2022 WL 2706150, at *5 (E.D. Ky. July 12, 2022).

**1.    The ALJ did not reject parts of Dr. Hundley's opinion.**

The ALJ appropriately explained the persuasiveness of Dr. Hundley's medical opinion, finding it "largely persuasive." (AR at 25.)  The ALJ also adequately articulated the supportability and consistency of her opinion.  Regarding supportability, the ALJ found that Dr. Hundley's opinion was "supported by her own evaluation, which indicated a largely normal mental status evaluation concerning objective testing." (*Id.*)  As for consistency, the ALJ stated that Dr. Hundley's opinion was "consistent with the medical evidence of the record, the claimant's testimony and largely independent daily activities." (*Id.*)  Though brief, the ALJ's explanation is sufficient.

Contrary to Newman's argument, the ALJ did not "reject[]" parts of Dr. Hundley's opinion. (DE 10-1 at 3.)  Dr. Hundley found that Newman's ability to handle work stress was "moderately to markedly limited" and her ability to interact with others appropriately in a work environment was "moderately to markedly limited."  (AR at 645.)  Therefore, Dr. Hundley's assessment was that Newman's abilities in these two areas fell within the range of moderate to marked limitations.  The ALJ's conclusion is entirely consistent with Dr. Hundley's opinion—the ALJ found that Newman's mental impairments were at the moderate end of that spectrum.

---

[2] The ALJ also considers the provider's relationship with the claimant, any specialization of the provider, and any other relevant factor.  § 404.1520c(c).

5

2.      **The ALJ properly rejected Ms. Sutherland's opinion.**

The ALJ also appropriately explained the persuasiveness of Ms. Sutherland's opinion; based on his articulation of the opinion's supportability and consistency, he found that her opinion was "not persuasive." Regarding supportability, the ALJ found that Ms. Sutherland's opinion was "not supported by her own evaluation, as she indicates the claimant could independently manage funds despite all the limitations observed." (AR at 25.) As for consistency, the ALJ stated that the limitations that Ms. Sutherland observed were "not consistent with the claimant attending several colleges and a university." (*Id.*) Importantly, the ALJ noted that Ms. Sutherland's opinion was "based largely on subjective criteria and there was no testing indicated." (*Id.*) On its face, the ALJ's explanation of why Ms. Sutherland's opinion was not persuasive passes muster. However, Newman objects to the ALJ's conclusion on several grounds.

For one, Newman points to the similarities between Ms. Sutherland's opinion and Dr. Hundley's opinion to argue that the opinions are consistent with one another. Both opinions found Newman's ability to understand and remember simple instructions is fair. (AR at 645, 903.) Both found her ability to maintain attention and concentration is fair. (AR at 645, 904.) Both found that Newman was capable of managing her disability funds. (AR at 645, 903.) According to Newman, Ms. Sutherland found that her ability to relate to others was "[p]oor," and her ability to tolerate work stress was "[v]ery poor," which is consistent with Dr. Hundley's finding that Newman's abilities in those areas have moderate to marked limitations. (*Id.* at 904; DE 10-1 at 4-5.) The Court hesitates to conclude that Ms. Sutherland's findings regarding Newman's abilities to handle stress and relate to others in the work setting are consistent with Dr. Hundley's own findings because Ms. Sutherland does not use the terminology typically used to describe a claimant's limitations under the Act's regulations—i.e., "mild," "moderate," marked," etc. *See* 20 C.F.R. § 404.1520a(c)(4). Ms.

6

Sutherland's definition of "poor" unlikely equates to a moderate limitation, where the claimant's "functioning in [an] area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

Moreover, Newman ignores a key difference between Ms. Sutherland's opinion and that of Dr. Hundley and fails to consider the opinions as a whole. Dr. Hundley's opinion was based, at least in part, on objective testing, whereas there is no evidence that Ms. Sutherland conducted any testing at all. Dr. Hundley's report included no less than nine different types of objective testing used to evaluate Newman's mental state. (*See* AR at 642-43.) In contrast, Ms. Sutherland simply wrote a letter describing Newman's mental impairments with no reference to any testing. (*Id.* at 902-04.) And, while supportability and consistency are the "most important factors in determining the persuasiveness" of a medical opinion, that is not the only factor an ALJ may consider. *See Terhune*, 2022 WL 2910002, at *3. Therefore, the ALJ reasonably found that Dr. Hundley's opinion was more persuasive than Ms. Sutherland's opinion because of the types of information each professional relied upon in forming an opinion on Newman's mental impairments.

Next, Newman alleges that the ALJ did not "adequately consider the supportability of Ms. Sutherland's medical opinion." (DE 10-1 at 9.) The ALJ indeed found that Ms. Sutherland's opinion was "*not supported* by her own evaluation, as she indicates the claimant could independently manage funds despite all the limitations observed." (AR at 25 (emphasis added).) The ALJ's discussion as to supportability "does not need to be lengthy" to be sufficient. *Terhune*, 2022 WL 2910002, at *4. Further, the ALJ's conclusion is based on substantial evidence, as Ms. Sutherland's opinion repeatedly describes problems that Newman has with completing simple, routine tasks because of her mental illness. (*See* AR at 902-04.) For example, Ms. Sutherland states that Newman needs assistance with problem-solving "relatively minor issues" that make it "difficult for her to function in a typical manner

on a day-to-day basis." (*Id.* at 902.)  According to Ms. Sutherland, Newman specifically has issues with keeping appointments and following through with her therapy plan.  (*Id.*)  Ms. Sutherland also found that Newman's ability to handle the stress and pressure associated with daily working activities is "[v]ery poor."  (*Id.* at 904.)  Even though Ms. Sutherland identifies these limitations in Newman's ability to complete routine tasks, she also found that Newman could independently manage her disability funds, itself a routine task.  (*Id.* at 903.)  The ALJ could reasonably conclude that an individual who is capable of managing her disability funds independently could also be expected to complete daily tasks without issue.  Due to the inherent discrepancies in Ms. Sutherland's opinion, the ALJ properly rejected her opinion as unpersuasive.

Finally, Newman argues that it was "inappropriate and illogical for the ALJ to rely on Ms. Newman's past education to reject the limitations in Ms. Sutherland's medical opinion" because it was "completely irrelevant."  (DE 10-1 at 12.)  In evaluating the consistency of Ms. Sutherland's opinion, the ALJ found that the limitations she observed (such as difficulties with completing routine tasks and problem-solving minor issues) "are not consistent with the claimant attending several colleges and a university."  (AR at 25.)  However, the relevant regulations explicitly provide that the Social Security Administration ("SSA") obtains information from a claimant's educational institutions as necessary "to assess how [the claimant's] mental disorder affects [her] ability to function."  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  Accordingly, Newman's past education is relevant to assessing her mental functioning.

### 3.    The ALJ's conclusion is based on substantial evidence.

Throughout her motion, Newman argues that the ALJ had no basis for finding that she has moderate rather than marked limitations in her abilities to handle work stress and interact appropriately with others in the work setting.  (DE 10-1 at 7.)  Within the ALJ's

8

analysis of Newman's RFC, Newman identifies a single paragraph where he explains, "[D]espite any of her mental impairments the evidence of record fails to show extreme or marked limitations in understanding, remembering, applying information; interacting with others; in concentrating, persisting, or maintaining pace; or in adapting or managing oneself." (DE 10-1 at 6 (citing AR at 25).)  According to Newman, that conclusion is based solely on the preceding sentence, which states, "[D]espite these impairments, the claimant was retained only one grade level, and when she was without the benefit of prescription medications or school accommodations." (*Id.* at 7-8 (citing AR at 25).)  But nothing in the record demonstrates any significant evidence regarding Newman's grade school experience.

However, elsewhere in his decision, the ALJ *did* explain his basis for finding that Newman has only moderate limitations resulting from her mental impairments.  At step three, the ALJ examined broad areas of Newman's mental functioning in-depth and based on evidence in the record, including areas relevant to her abilities to handle stress and interact with others in a work setting.  (See AR at 20-21.)  These areas were "understanding, remembering, or applying information"; "interacting with others"; her "ability to concentrate, persist, or maintain pace"; and her "ability to adapt or manage herself." (*Id.*)  In all of these areas, the ALJ found that Newman has only moderate limitations.  (*Id.*)  The ALJ then indicated that he incorporated his analysis of these limitations into his assessment of Newman's RFC, stating, "[T]he following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the [foregoing] mental function analysis." (*Id.* at 21.)

Whether or not the ALJ erroneously referred to Newman's grade school experience is inconsequential.  Substantial evidence otherwise supports the conclusion that Newman has moderate limitations in her abilities to handle stress and interact with others in a work setting.  Two additional physicians (Dr. Dan Vandivier and Dr. Jane Brake) similarly

concluded that Newman's ability to respond appropriately to changes in her work setting and her ability to interact appropriately with the general public were "moderately limited." (AR at 103, 121.)  Notably, Dr. Vandivier and Dr. Brake found Newman's abilities to work in coordination with others without distraction and make simple work-related decisions were not significantly limited.  (*Id.*)  Medical professionals consistently defined Newman's demeanor as "cooperative" with "good eye contact," and her thought process as "goal directed," "organized," "logical," and "linear."  (*See, e.g.,* AR at 295.)  Dr. Hundley described Newman as "alert" and "pleasant" with "coherent" speech.  (AR at 642-43.)  Despite any difficulties Newman experiences in social situations, she still lives with other people, goes shopping for groceries in public, and attends a social club for gaming on a weekly basis.  (AR at 294, 644.)  Accordingly, the ALJ reasonably found that Newman has only moderate limitations in her abilities to handle stress and interact with others in a work setting.

The ALJ's decision was consistent with Dr. Hundley's opinion, which he found largely persuasive.  Further, the ALJ properly rejected Ms. Sutherland's opinion, and substantial evidence supports that Newman only has moderate limitations in her abilities to handle stress and interact with others in a work setting.  Accordingly, the ALJ did not err in finding that Newman only has moderate limitations rather than marked limitations in her abilities to handle stress and interact with others in a work setting.  The Court cannot grant summary judgment for Newman on this basis.

**B.      The ALJ had legal authority to adjudicate this case because he was properly appointed.**

Newman also moves to remand this matter to the SSA so that it can be heard before a different ALJ.  In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court held that ALJs for the Security Exchange Commission ("SEC") must be appointed by the president, a court, or the head of the agency.  *Id.* at 2051, 2055.  The Court held that the proper remedy for the

petitioner, whose cases was heard and decided by an ALJ who had not been constitutionally appointed, was a *de novo* hearing before a different and properly appointed ALJ. *Id.* at 2055. In the past, ALJs for the SSA were hired by the Office of Personnel Management. Like SEC ALJs, they were not appointed by the president, a court, or the head of the agency. On July 16, 2018, Nancy Berryhill, the then-Acting Commissioner of SSA, ratified the appointments of all SSA ALJs to foreclose Appointments Clause challenges to ALJ decisions. Newman argues that Berryhill lacked authority to ratify these appointments under the time limits prescribed in the Federal Vacancies Reform Act ("FVRA"), 5 U.S.C. § 3346. (DE 10-1 at 13-14.)

§ 3346(a) provides that "the person serving as an acting officer . . . may serve in the office . . . (1) for no longer than 210 days beginning on the date the vacancy occurs; *or* (2) . . . once a first or second nomination for the office is submitted . . . , from the date of such nomination for the period that the nomination is pending[.]" § 3346(a) (emphasis added). Berryhill initially served as the Acting Commissioner until November 16, 2017, when her 210-day period of service expired. On April 17, 2018, Andrew Saul was nominated to serve as the SSA Commissioner. Upon the submission of Saul's nomination, Berryhill resumed serving as the Acting Commissioner. During her second period of service and while Saul's nomination was still pending, Berryhill ratified the appointments of all SSA ALJs on July 16, 2018.

Newman argues that, under § 3346(a)(1), Berryhill could not serve beyond the initial 210-day period. (DE 10-1 at 13.) Because she ratified the SSA ALJ appointments after that 210-day period expired, that action is void. (*Id.*) Therefore, according to Newman, the ALJ lacked authority to decide her claim. (*Id.* at 14.) The Acting Commissioner argues that § 3346(a)(2) acts as a "spring-back" provision, enabling Berryhill to properly resume her role as of the date that Saul's nomination was submitted. (DE 14 at 10.)

11

The vast majority of federal courts addressing this issue (including the only Court of Appeals to reach the question) agree with the Acting Commissioner's interpretation of § 3346(a), finding that § 3346(a)(2) is a spring-back provision that allowed Berryhill to properly resume her service. *See, e.g., Dahle v. Kijakazi*, No. 22-1601, ---F.4th----, 2023 WL 2379383, at *4 (8th Cir. 2023) ("Berryhill was properly serving as Acting Commissioner when she ratified the appointment of the SSA ALJs."); *Tidwell v. Kijakazi*, No. 3:22-cv-0185, 2023 WL 2531483, at *7 (M.D. Tenn. Mar. 14, 2023) (Accordingly, just as . . . most other courts have found, this Court concludes that, based on the plain language of the FVRA, Ms. Berryhill was properly serving as Acting Commissioner of the SSA and, therefore, had the authority to nominate the ALJ that oversaw Plaintiff's case in 2017."); *Williams v. Kijakazi*, CIVIL NO. 1:21-CV-141-GCM, 2022 WL 2163008, at *4 (W.D.N.C. June 15, 2022) (finding that the plaintiff's argument that Berryhill lacked the authority to ratify ALJ appointments was "without merit"); *Thomas S. v. Comm'r of Soc. Sec.*, CASE NO. C21-05213-MAT, 2022 WL 268844, at *3 n.2 (W.D. Wash. Jan. 28, 2022) ("Acting Commissioner Berryhill's service was not in violation of the FVRA at the time that the ALJ was appointed."). In *Dahle*, 2023 WL 2379383, the Eighth Circuit overturned one of the two outlier cases[3] that Newman cites in support of her position, *Brian T. D. v. Kijakazi*, 580 F. Supp. 3d 615 (D. Minn. 2022). (DE 10-1 at 14.) In light of this authority and based on the plain language of § 3346(a), Court sees no reason to stray from this interpretation.

The Court finds that Berryhill had authority to ratify the appointments of SSA ALJs because she was properly serving as the Acting Commissioner at that time. Therefore, the

---

[3]An appeal has also been filed in the second case, *Richard J. M. v. Kijakazi*, No. 19-cv-827 (KMM), 2022 WL 959914 (D. Minn. Mar. 30, 2022). That appeal is likewise before the Eighth Circuit.

ALJ in this case had the legal authority to adjudicate Newman's claims, and remand is not warranted.

Accordingly, the Court grants the Acting Commissioner's motion for summary judgment and denies Newman's motion for summary judgment.

## II.    Conclusion

For all these reasons, the Court **HEREBY ORDERS** that:

1.    The plaintiff's motion for summary judgment (DE 10) is DENIED;

2.    The defendant's motion for summary judgment (DE 14) is GRANTED;

3.    The decision of the Commissioner is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

4.    A judgment will be entered contemporaneously with this order.

This 29th day of March, 2023.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY